EDMUND F. CULVER v. JOHN McKEOWN IMPLEADED WITH CAROLINE CROSSMAN.

*Time of foreclosure sale—Transfer of bids—Costs.*

The one year and six weeks that must elapse before the sale on foreclosure, may be computed from the date of taking out the subpœna, if it is taken out with the intention in good faith of serving it as soon as possible, and there is no laches in obtaining service.

Costs may be denied where a question of practice is involved that is fairly open to question.

Transfer of a bid made on foreclosure sale will not be ground for ordering a new sale.

Appeal from the Superior Court of Detroit. Submitted April 9. Decided April 21.

PETITION by defendant in foreclosure for re-sale of the premises. Denied. Petitioner appeals.

*Alex. D. Fowler* for petitioner. Commencement of suit may date from the delivery of summons to the sher-

iff, or service of process, *Cornell v. Moulton* 3 Den. 12; *McGraw v. Walker* 2 Hilt. (N. Y.) 404; Comp. L. § 5723.

*Maybury & Conely* for appellee. When a foreclosure sale has been confirmed, it can be opened only on a showing that the price bid was inadequate, and of some fraud, mistake or accident, 2 Dan. Ch. Pr. 1285-8; but the practice of re-opening for inadequacy of price was disapproved in *White v. Wilson* 14 Ves. 151; *Fergus v. Gore* 1 Sch. & L. 350; *Barlow v. Osborne* 6 H. L. 556; public judicial sales at auction are less public in England than in the United States (*Frazier v. Hall* 2 McCord Ch. 159, n *b*) where mere inadequacy of price, in the absence of fraud, accident, mistake or some similar equitable consideration is not good cause for setting aside public judicial sales, 2 Barb. Ch. Pr. 185, n. 30; *Gardiner v. Schermerhorn* 1 Clark 101; *Lefevre v. Laraway* 22 Barb. 167; *Williamson v. Dale* 3 Johns. Ch. 290; *Duncan v. Dodd* 2 Paige 99; *Requa v. Rea* id. 339: *Post v. Leet* 8 Paige 337; *Amer. Ins. Co. v. Oakley* 9 Paige 259; *Brown v. Frost* 10 Paige 244; *Collier v. Whipple* 13 Wend. 224; *Tripp v. Cook* 26 Wend. 143; *Lansing v. McPherson* 3 Johns. Ch. 425; *Thompson v. Mount* 1 Barb. Ch. 607; *Andrews v. Scotton* 2 Bland 627; *Young v. Teague* Bailey's Eq. 14; *Seaman v. Riggins* 1 Green Ch. 214; *Conover v. Walling* 2 McCarter 173; *Henderson v. Lowry* 5 Yerg. 240; *Houston v. Aycock* 5 Sneed 406; *Penn v. Tolleson* 20 Ark. 652; *Gordon v. Saunders* 2 McCord Ch. 151; *Anderson v. Foulke* 2 Har. & G. 346; *Wood v. Hudson* 5 Munf. 423; *Campbell v. Gardner* 3 Stockt. 423.

GRAVES, J. McKeown made application for resale of mortgaged premises, and the same was denied. He then appealed.

The first ground urged is that the sale was premature, and hence irregular. The bill was filed November 9, 1878, and Caroline Crossman, as prior mortgagee of portions of the premises, was joined as defendant. On

the same day subpœna to answer as to both defendants was taken out and delivered to the sheriff for service, which he effected immediately on defendant Crossman. Failing to get service on McKeown, a second subpœna was sued out December 30, 1878, and served on him the next day. The defendants neglecting to appear, the bill was taken as confessed February 4, 1879. November 18, 1879, publication was commenced of notice that the premises would be sold January 2, 1880, and on that day the sale took place and it left a deficiency of about $800. January 7, 1880, the petition was filed, and on the 17th of the same month the court denied it. The defendant Crossman is satisfied with the sale and does not favor the attempt to disturb it.

The petitioner contends that, under present regulations, it was required by correct practice to allow one year and six weeks between the commencement of the foreclosure and the sale, and that the foreclosure did not commence against McKeown until he was actually served with subpœna on the 31st of December; and therefore that no sale could be regularly held on the second of January, 1880, or earlier than some time in February.

It is not disputed that a year and six weeks must elapse between the commencement of the suit and the sale. The disagreement is in regard to the time when the suit is to be deemed commenced. The counsel resisting the motion denies that in respect to this regulation the suit is to be considered as *not* commenced until actual service of the subpœna. He contends that when there is no unreasonable delay, and the subpœna is seasonably taken out in good faith and with the purpose of having it served as soon as service is fairly practicable, the suit is then regularly commenced within the spirit and intent of the regulation, and that the case shows that this was done on the 9th of November, 1878, and that the sale was therefore not premature.

This position, we think, accords with the import of our previous decisions, and is as strict against complain-

ants as the law will permit. The rule in New York is less favorable to defendants. There the suit is deemed commenced by the filing of the bill. 1 Barb. Ch. 1.

It is not claimed that there was any lack of diligence or want of good faith in the matter of getting service of the subpœna, and hence the first ground of the application is not sustainable.

The case has been carefully considered and with a desire by the court to find some safe basis on which to order a re-sale of at least lot 36, or in lieu of it to give McKeown the benefit of the private bounty Miss Crossman's solicitors took from Scripps. But, taking into account how the interests are separated, and seeing precisely what is shown by the affidavits, it is found to be impracticable.

Lot 75 was sold to Mr. Adams, and the complainant bid off lots 68 and 69. Lot 36 was sold to Miss Crossman, and her bid was transferred at once to Scripps, by direction of her solicitors, on his paying them about $140. All the lots were considerably burdened with back taxes of one kind or another, and the different sales were made subject to them.

It is not proved that any fraud was committed against McKeown, although there is some evidence of practice to mislead him, and no case is made out of any surprise of which he would be entitled to complain. He was fully aware sometime beforehand that the sale was coming off, and he actually attended it with counsel. True, he had received some encouragement from complainant that a postponement might, perhaps, be agreed upon, but no agreement for indulgence was actually reached, and he was not led to understand that he might rely at all on the expectation that one would be made. Whether a postponement would be granted was left uncertain and subject to the notions of others, and when he came to ask for it at the sale it was refused. There was nothing in the state of facts, and nothing had occurred in the antecedent negotiations to entitle him to be unprepared

for this contingency, or to warrant him in neglecting such efforts as his interests required, to be ready on the day appointed for the sale. What is here said is of course based on what appears in the record.

The transfer of the bid of Miss Crossman to Mr. Scripps worked no prejudice to McKeown. It could make no difference to him whether Scripps succeeded to the interest through the transfer of the bid, or by grant from Miss Crossman after conveyance to her by the circuit court commissioner. If the practice was not strictly technical, he was not affected by it.

Scripps swears that he dropped his negotiation with McKeown for lot 36 prior to the sale, and was induced to do so because the price ($800) was too high, and also because of difficulty about getting a good title from McKeown.

It does not appear that he had informed McKeown that the negotiation was abandoned, and on the other hand it is not proved that McKeown considered it pending during the few days immediately preceding the day of sale. Miss Crossman, whose bid of $500 was immediately passed by her solicitors to Scripps for the consideration to them before mentioned, does not complain. Her prior mortgage appears to have been satisfied from the fund produced by the sales of the mortgaged premises in separate parcels to different purchasers, and the case is complicated by means of there having been separate encumbrances and separate sales.

Finally, the showing holds out no prospect that appreciably better terms would be obtained on a resale. The petitioner does not assume to allege his belief even that the premises can be sold to better advantage at another auction, and he offers no kind of assurance that the fund may be increased.

On the other hand, the parties opposing the petition show that the probabilities are decidedly against a result more advantageous to the fund.

So far as the case shows equitable ground for inter-

fering at all, it is confined to lot 36, and the facts seem to forbid a resale of that parcel by itself. It would be attended by considerable expense, and for all that appears it might terminate in leaving the prior mortgage of Miss Crossman partially unsatisfied and do her irreparable injury, and no other mode of relief is apparent on this application. The court certainly has no power to transfer the sum accepted from Scripps by Miss Crossman's solicitors to McKeown's credit, although the circumstances are strong to show that such an appropriation would be abstractly just.

The conclusion is that the order appealed from cannot be disturbed, and must consequently stand affirmed. But the court is of opinion that as a question of practice is involved in respect to which some doubt seems to have been entertained, and upon consideration of all the equities, no costs of this court ought to be allowed.

The other Justices concurred.